# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**VICTOR LASHUN MOSLEY**                                                             **PLAINTIFF**

**V.**                                                               **CIVIL ACTION NO. 1:21CV107-DAS**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                       **DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding his application for disability insurance benefits and supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The court, having reviewed the administrative record, the briefs of the parties, and the applicable law and having heard oral argument, finds the decision of the Commissioner of Social Security should be affirmed.

## FACTS

The plaintiff, Victor Lashun Mosley, filed for benefits on March 29, 2019, alleging onset of disability commencing in September 1, 2018. The Social Security Administration denied the claim initially and on reconsideration. His date last insured was March 31, 2019. Following a hearing, the ALJ issued an unfavorable decision on December 23, 2020. (Dkt. 9 p. 23-33).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] All references are to the administrative record using the court's numbering system, rather than the administrative numbering.

The ALJ determined Mosley had the following severe impairments: deep vein thrombosis, diverticulitis, hypertension, lumbar degenerative disc disease, chronic obstructive pulmonary disease, and obesity. The ALJ found Mosley retained the residual functional capacity (RFC) to perform light work, except he will need a cane for walking. He can occasionally crouch, kneel, crawl, and climb ramps and stairs. He can never climb ladders or be exposed to unprotected heights or dangerous machinery.

The ALJ found that Mosley cannot perform his past relevant work as an industrial cleaner or as a meat cutter because both jobs are performed at the medium level of exertion. Based on the testimony of the vocational expert, the ALJ found he could do other jobs that exist in substantial numbers in the national economy, namely merchandise marker, routing clerk and mail sorter, each being unskilled light work. He therefore determined that Mosley was not disabled.

## ANALYSIS

The plaintiff raises three issues in support of his appeal. He argues the ALJ erred in accepting the testimony of the vocational expert (VE) who testified that Mosley could perform three different light jobs despite the ALJ finding that the plaintiff would need to use a cane to ambulate. He also argues this testimony conflicts with the DOT, and that the conflict was not resolved. Finally he urges the court to find that the ALJ lacked sufficient information to support an unfavorable decision without ordering and considering a consultative examination.

**1. Possible Conflict Between VE Testimony and the DOT**

Because the first two issues are interrelated, the court addresses these issues together. Fundamentally the plaintiff's primary complaint about the VE's testimony boils down to a disagreement with his testimony. The VE testified that the three jobs he identified, which are

classified as light jobs, could be performed by the plaintiff even though the ALJ found Mosley would need a cane during ambulation. Mosley argues that there would have to be an erosion of jobs noted by the VE secondary to Mosley's use of the cane, because per SSR 96-9p use of a cane can cause an erosion of jobs in sedentary work. But the VE expressly testified that there would be no erosion of numbers on the three jobs selected because these were primarily sorting jobs, i.e., the jobs largely requiring standing, and not walking. He testified that the walking would "probably not range up to the full range of the light physical restrictions as detailed in the DOT ….and therefore there would be no erosion." R.84-85. The ALJ expressly addressed the impact of the use of the cane with the VE, who testified that the DOT does not address the use of a hand-held assistive device. The VE said his testimony about the impact of the use of the cane was based on both the DOT and his expertise and experience as a vocational expert. The decision expressly addresses this potential conflict and expressly resolved the conflict, by accepting the VE's testimony. Because this court may not reweigh the evidence on appeal, the ALJ's acceptance of this testimony cannot be disturbed. *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000). Accordingly, the court finds substantial evidence supports the decision.

Mosley also argues the ALJ failed to consider issues of balance under SSR 96-9p, which suggests that if an individual is "limited in balancing even when standing or walking on level terrain there may be significant erosion" of unskilled sedentary jobs. The plaintiff has confessed that the issue was not raised at the administrative level, and it is therefore waived. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). But to find error the court would need to stack a series of suppositions to find in Mosley's favor. First, it is clear the ALJ was giving the plaintiff the benefit of the doubt when he found he needed to use the cane for ambulation. He noted that, "[d]espite his benign findings on examination, the claimant received a prescription for a cane in

3

October 15, 2020." This was one day before the hearing. R. 27, 1519. The plaintiff argues because the cane was prescribed for a "risk for falls," that his ability to balance was an issue that had to be addressed further. SSR-96-9p provides that "if an individual is limited in balancing even when standing or walking on level terrain, there may be significant erosion of the unskilled sedentary occupational base." However, the ALJ only found Mosley needed the cane to ambulate, not standing on even or uneven terrain. The plaintiff points to no medical evidence of a significant balance problem other than the doctor's bare "risk of falls" note and the court sees no basis for assuming that he would have a problem standing on any terrain. As mentioned, he error was not presented and is waived and alternatively, the plaintiff has not shown error or prejudice.

## 2. Need for Consultative Examination

The plaintiff asserts the ALJ erred in not ordering a consultative examination. The Commissioner enjoys discretion in deciding whether to order a consultative examination. The plaintiff reads the ALJ's decision as complaining about the lack of medical evidence but then refusing to order the consultative examination. He also points to the decision in his earlier application, which while denying benefits, found Mosley could perform only a limited range of sedentary work, contrasted to the light work RFC assigned in this latest iteration. While admitting the earlier decision has no binding effect, he argues the discrepancy between the two decisions indicates the need for a consultative examination. The difference between two decisions by different ALJs on different evidence does not support the request for a consultative examination in this case.

Furthermore, while it is true that this plaintiff did not have a primary care treating physician, there is no dearth of treatment records. He was regularly followed for his deep vein

thrombosis. Though not ideal, Mosely received regular treatment at emergency rooms for his other medical complaints. The ALJ stated, "There is no objective medical evidence (i.e. relevant diagnostic testing showing serious physical abnormalities or treatment notes showing a longitudinal history of serious physical abnormalities on examination) from any treating source to establish a longitudinal history of serious, chronic physical difficulties." R. 29.

However, it is clear the ALJ was not referring to a lack of medical records – he was referring to an absence of findings in those records that were helpful to Mosley's application, and the ALJ then discussed the medical evidence in the record in some detail. According to the ALJ, the records were not "objective medical evidence to establish a long history of serious, chronic and disabling symptoms and limitations" from his impairments. R. 29. The ALJ noted Doppler examinations indicating chronic, old, non-occlusive DVT; a CT angiogram showing no pulmonary embolism; and normal EKGs in October 2018, July 2019, January 2020, May 2020, and October 2020. The ALJ noted the supra-umbilical hernia for which Mosley underwent a successful laparoscopic repair. A July 2019 CT showed a suspected bowel obstruction which was repaired in laparoscopic surgery. A December 2019 scan showed sigmoid diverticulosis but not evidence of diverticulitis. An April 2020 CT scan showed no acute abnormality. Radiographic imaging of his left knee in February 2020 shows no acute findings. An August 2020 MRI of the lumbar spine was normal, and an October 2020 lumbar spine CT showed no suggestion of any lumbar spinal stenosis.

The ALJ then discussed the treatment records from Dr. Borden which contained generally unremarkable findings. The claimant is obese, but his weight remained constant. His blood pressure appeared to be controlled. The abnormal findings in the doctor's records were not serious. There was trace edema bilaterally in his lower extremities on multiple occasions. He had

mild tenderness in the left lower quadrant with a reproducible hernia. While the claimant asserted he had COPD, this doctor's records showed only some scattered wheezes on a few occasions. The ALJ then concluded: "rather, the medical findings on examination do not establish serious physical abnormalities." R. 30. Clearly the ALJ was not commenting upon the adequacy of the medical evidence in the record for the purpose of deciding, but instead noting the medical records do not show disabling conditions. Additionally, the final decision on the RFC was supported by opinions of the agency doctors who assessed Mosley as capable of performing light work. The ALJ added further restrictions based on the prescription of the cane and Mosley's subjective complaints. Accordingly, after considering the ALJ's detailed decision and the accompanying record, the court finds no error in failing to order a consultative examination.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is affirmed in its entirety.

**SO ORDERED** this the 3rd day of August, 2022.

/s/ David A. Sanders  
**U.S. MAGISTRATE JUDGE**